Donna SPENCER, Plaintiff,

v.

Richard L. ROUDEBUSH et al., Defendants.

Civ. A. No. 76–49.

United States District Court, D. Delaware.

Nov. 9, 1977.

Donna Spencer, pro se.

Kent Walker, Asst. U. S. Atty., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Presently before the court is a Rule 56 motion for summary judgment brought by defendants against pro se[1] plaintiff, Donna Spencer. After proceeding through administrative appeal channels, Ms. Spencer filed a complaint alleging discrimination[2] by various officials[3] of the Veteran's Administration (V.A.) in connection with her June 22, 1974 discharge from her probationary position of Licensed Practical Nurse at the V.A. Center in Wilmington, Delaware. Defendants are, respectively, the United States Administrator of Veteran's Affairs, the Director of the V.A. Center in Wilmington, and the Chief Nurse at the Center. Two questions are presented: (1) whether plaintiff's failure to institute a civil action in federal court within thirty days of "final" denial of her first administrative claim necessitates dismissal of her appeal on that claim even though plaintiff was not afforded formal notification of her right to institute a civil action within thirty days; and (2) whether plaintiff's second administrative claim was properly denied by administrative authorities because it was not filed in timely fashion.

Plaintiff could have challenged her discharge through either of two appeal procedures.[4] She elected to proceed through the Civil Service Commission (C.S.C.) pursuant to section 315.806 of the Civil Service Regulations.[5] Plaintiff was properly informed that no hearing was available if she chose this avenue of appeal. By letter of October 30, 1974, the Chairman of the Appeals Review Board of the C.S.C. informed plaintiff that her discharge was "final" and that she possessed no further right to administrative appeal.

Nonetheless, on March 3, 1975, plaintiff filed a second administrative claim with the Equal Employment Opportunity (E.E.O.) officer of the V.A. Center in Wilmington. This claim was rejected as not filed in timely fashion. See 5 C.F.R. § 713.214 (1977). Plaintiff appealed the decision and by letter of December 31, 1975 the Appeals Review Board of the C.S.C. affirmed the decision that the second claim was not timely filed.

1. Although plaintiff presently appears pro se, she was represented by different counsel during each of the two administrative appeals processes.

2. Documents submitted in this case reflect charges of both racial and sexual discrimination. At the September 29, 1977 oral argument on the Rule 56 motion, however, plaintiff stated that she believes that she was discriminated against on the basis of her race, and that she does not complain of gender discrimination.

3. Plaintiff originally attempted to sue the V.A. Center. This Court held in a Memorandum Opinion dated September 2, 1976 that neither the V.A. nor its specific facilities could be sued by name because Congress has not designated the V.A. as a corporate entity subject to suit. Plaintiff thereafter amended her complaint to designate as defendants certain indispensable parties specified in the Memorandum Opinion. After further challenge by defendants, plaintiff again amended her complaint, naming the three presently enumerated party defendants.

4. 5 C.F.R. § 713.236 (1977) provides for mandatory election in discrimination cases of pursuing administrative appeal either through the specific agency alleged to discriminate or through the Civil Service Commission (C.S.C.).

If complainant chooses to proceed initially within the agency, the C.S.C. can review the agency determination to assure that it complies with the applicable agency regulations. Allegations of discrimination must initially be referred to the E.E.O. officer of the agency. 5 C.F.R. § 772.306(b) (1977). If complainant elects to proceed directly within the C.S.C., the C.S.C. will process the case pursuant to regulations designed for particular categories of employees. Compare 5 C.F.R. §§ 713.211–.222 (1977) with, e. g., 5 C.F.R. §§ 315.801–.807 (1977).

5. This regulation, 5 C.F.R. § 315.806 (1977), applies specifically to discrimination claims advanced by probationary employees. It provides lesser procedural protection than plaintiff could have obtained by commencing her appeal with the E.E.O. officer of the V.A. See 5 C.F.R. §§ 713.216–.222 (1977). Aware of the distinction and particularly that she could obtain a hearing only by proceeding through the E.E.O. officer, plaintiff after consultation with her attorney nevertheless chose to proceed pursuant to section 315.806, apparently because she distrusted the V.A. and/or the E.E.O. officer who worked within the V.A. framework. (Doc. No. 22, Administrative Record at 89–91, 118)

(Doc. No. 22, Administrative Record at 2–3) Plaintiff was informed in the letter that she could appeal the determination that the second claim was not timely filed to a federal court within thirty days. Plaintiff thereafter instituted this pro se action on January 27, 1976.

## I.

■ Section 717 of the Civil Rights Act of 1964, as amended,[6] 42 U.S.C. § 2000e–16, is the exclusive remedy available to an individual federal employee complaining of job related discrimination. *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *see Gissen v. Tackman,* 537 F.2d 784 (3d Cir. 1976) (en banc). Subsection 717(c) provides that a civil action may be filed in federal court within thirty days of notice of final action by the C.S.C. upon an appeal. 42 U.S.C. § 2000e–16(c). The undisputed conclusion in the instant case is that with respect to her first administrative claim, plaintiff did not institute a civil action until over 400 days after receipt of the October 30, 1974 letter indicating that "final" administrative action had been taken. Thus plaintiff cannot achieve judicial consideration of the merits of her first claim unless the lack of timeliness may be excused.

Plaintiff fails to articulate a specific basis for excusing the apparent failure to meet the thirty day requirement. The court takes notice, however, that plaintiff was not informed in the October 30, 1974 letter that she had a right to institute a civil action within thirty days. The Third Circuit held in an analogous context in *Allen v. United States,* 542 F.2d 176 (3d Cir. 1976), that such a failure meant that the administrative action was not "final" even though all available administrative appeals had been exhausted and that, accordingly, the thirty day period had not expired. The essential distinction between the present

case and *Allen, supra, Eastland v. Tennessee Valley Authority,* 553 F.2d 364 (5th Cir. 1977), and *Coles v. Penny,* 174 U.S.App.D.C. 277, 531 F.2d 609 (1976), the leading cases discussing notice requirements and federal employment discrimination claims, is that different appeals processes were involved. As previously rehearsed, plaintiff elected to proceed pursuant to C.S.C. regulations applicable to probationary employees, as opposed to standard E.E.O. regulations applicable to agency review that were at issue in *Allen, supra,* and the prior series of cases. *Compare* 5 C.F.R. § 315.806 (1977) *with* 5 C.F.R. § 713.214 (1977). The distinguishing feature is that the E.E.O. regulations stipulate that an applicant must be informed of the thirty-day time limit for filing a civil suit, 5 C.F.R. § 713.282 (1977), but the C.S.C. regulations contain no such instruction.

Thus the *Allen* court was confronted with a failure of the C.S.C. to conform to the operative E.E.O. Regulations. The Third Circuit held: "[W]e conclude that the Commission's regulations defining the content of its final action are valid. The failure of the Commission to notify Allen and Koon of their right to file a civil action and of the 30-day time limit for filing rendered the Commission's . . . opinion a non-final action . . . ." 542 F.2d at 180. Accordingly, *Allen* is not dispositive of the present action, since no violation of an operative regulation exists.

A more directly relevant precedent is *Coles v. Penny, supra.* In that case, plaintiff proceeded under the E.E.O. regulations which, at that time,[7] contained no requirement that a complainant be notified of the right to bring a civil action within thirty days. Although plaintiff failed to commence a civil action within the thirty-day statutory period, the District of Columbia Circuit refused to invalidate the claim. Comparing subsection 717(c) to an analo-

---

6. Section 717 was added by section 11 of the Equal Employment Opportunity Act of 1972, Pub.L.No. 92–261.

7. On October 21, 1972, the C.S.C. promulgated E.E.O. regulations expressly requiring that no-

tice of final agency action inform a complainant of the right to sue within a specified time period. *See* 5 C.F.R. §§ 713.221(d), .234, .282 (1977).

gous provision respecting private employees, the circuit court concluded that notice of the right to sue within thirty days was statutorily mandated: "We believe that the statute standing alone does require such notice." 531 F.2d at 614.

The *Coles* finding of a statutory notice requirement was considered by the Fifth Circuit in *Eastland, supra.* *Eastland* involved essentially the same factual circumstances as *Allen, supra* ; at a time when the regulations requiring notice were in effect, the complainant failed to fulfill the statutory thirty-day requirement. The Fifth Circuit rejected both the *Allen* concept that the limitation period does not run until notice required under the regulations is received and the broader *Coles* theory that notice is statutorily mandated. "But because we find the thirty-day limit to be jurisdictional, in accordance with the legislative history of the 1972 Amendments to Title VII and with private sector cases, we part company with those circuits and hold that these appellants' actions are barred." 553 F.2d at 368. Drawing its own comparison of public and private sector remedies, the circuit court concluded that private sector case law suggests that the prescribed time limit is a jurisdictional criterion that may not be overcome by an administrative agency regulation.

 Evaluating the present case against this background requires reexamination of the statutory notice requirement created in *Coles* and repudiated in *Eastland.*[8] Because plaintiff herein chose to proceed pursuant to regulations not necessitating notice of the right to sue, she would be foreclosed from judicial relief by the thirty-day limit, unless that limit is statutorily deemed to impose a notice requirement or some other exception is engrafted. For

both interpretive and policy reasons, I conclude that no obligation to provide notice is mandated by subsection 717(c). Accordingly, the civil action upon plaintiff's first administrative claim must be dismissed as untimely.

The District of Columbia Circuit in *Coles, supra,* stressed that the statutory notice requirement would apply only in a minimal number of cases. The rationale was that because the C.S.C. had enacted regulations that mandated notice in subsequent cases, only those scant instances involving matters pending administratively when the new regulations became effective were implicated. But although the particularized *Coles* application of statutory notice may have been desirable, this Court believes that the concept of construing subsection 717(c) to contain a notice requirement is a dangerous one with potentially far-reaching effects. If the mere existence of a statutory right to sue imposes upon an administrative review body the obligation to notify of that right to sue, then a virtual Pandora's Box is open and countless administrative rulings would be subject to cognizable challenge. Moreover, if the period in which suit must be brought is tolled until notice is received, then not only may countless other statutes be broadly construed to require notice, but also applicants whose claims an administrative agency rejected a substantial number of years ago may now achieve judicial review.

*Coles* neatly sidestepped this horrific specter. The facts in that case were such that only a comparatively short period of time separated passage of the statute from adoption of regulations that obviated the need to construe a statutory right of notice in future cases.[9] There is no such limiting element in the present instance and the

---

8. The precise *Allen* and *Eastland* issue arose again in *Beasley v. Griffin,* 427 F.Supp. 801 (D.Mass.1977). The district court adopted the *Allen* theory that the administrative denial was not "final" until notice was given. Without mentioning *Eastland,* the court cited the *Coles* theory of a statutory notice requirement as an "alternate basis" for its decision. 427 F.Supp. at 803.

9. One may interpret *Coles* to imply that a statutory notice requirement may be determined only where a subsequently enacted regulation confers the identical right. Although such a reading would serve to limit the potentially broad ramifications of the *Coles* implication doctrine, it not only is unarticulated in *Coles* but is theoretically problematic. If a court may imply a statutory right only when a regulation is subsequently passed, then what is actually

Court thus declines to imply a statutory notice requirement in subsection 717(c).[10]

The possibility of implying a right to sue notice in the factual context of this case, either from the existence of the E.E.O. regulation at issue in *Allen, supra,* or as an equitable matter given the broad remedial purpose of Title VII, has also been considered. *Allen* construed the existence of a notice regulation to justify a rule that the indicated notice must be given before a statutory time limit commences running. One might argue that although *Allen* involved an E.E.O. regulation and the present case contains a C.S.C. probationary employee appeal, the *Allen* regulation applied specifically to public sector employment discrimination and should be extended by implication to cover all such cases. Alternatively, one might find a "procedural ambiguity" enabling liberal construction in line with Title VII's purpose of eliminating discrimination. *See Coles, supra,* 531 F.2d at 615–16.

Both possibilities are rejected. To extent *Allen* to the present case would not only represent judicial extension of a regulation promulgated for one appeals process to an entirely different process, but would be done in a situation where the court cannot say even in hindsight that such a rule would meet with the approval of its drafters. Unlike the situation in *Allen* and *Coles,* in the present case to this date no notice requirement exists in the applicable C.S.C. regulations.

■ Moreover, the equities of the situation favor denial of the claim as untimely. Plaintiff was informed by the C.S.C. that she could pursue her allegations of discrimination either through a probationary appeal to the C.S.C. or through the E.E.O. complaint procedure within the V.A. She was notified that, in contrast to the E.E.O. procedure, the C.S.C. probationary process afforded no hearing.[11] At that point represented by an attorney, plaintiff voluntarily

transpiring is that the court is exercising selective discretion to render the regulation retroactive. Thus, contrary to the language of *Coles* of a *statutory* notice requirement, 531 F.2d at 614, the requirement would derive retroactively from a *regulation.* Of course, such a ruling of retroactivity would not affect the result in the present case because even today no notice of right to commence a civil action requirement exists for administrative rulings pursuant to 5 C.F.R. § 315.806 (1977).

10. The references in *Coles* and *Eastland* to comparable private sector legislation are inconclusive. *Coles* states that subsection 717(c) was patterned upon 42 U.S.C. § 2000e–5(e). The passage of that section led one year later to promulgation of a regulation requiring notice of the right to sue. *See* 29 C.F.R. § 1601.-25(a)(3) (1976). But the analogy is unsatisfactory. First, the circuit court did not consider whether during the one year hiatus before passage of the regulation a statutory right was construed in the private sector. Second, absent such proof, a plausible interpretation is that because of its experience with the private sector legislation, Congress was aware and accepted in passing subsection 717(c) that a notice requirement would have to be adopted by regulation and that, at a minimum, such a regulation would evolve only after a time gap.

The *Eastland* comparison is predicated upon the holding in *Dematteis v. Eastman Kodak,* 511 F.2d 306 (2d Cir.), *modified on rehearing,* 520 F.2d 409 (2d Cir. 1975), that the limitation period set forth in 42 U.S.C. § 2000e–5(f)(1) commences running from receipt of agency notice of dismissal and not from the later receipt of a right to sue letter. But excessive reliance on *Dematteis* is undesirable because in that case the issue whether the statute may confer an independent notice requirement was never discussed. Moreover, the private sector statute relevant to *Dematteis* provided for a ninety-day limit for the bringing of a civil action, and one may argue that although thirty days is a relatively short period in which to expect one to bring suit absent notice of a time restraint, ninety days is a sufficiently long period so that a party may be expected to act even without notice of his right to do so. Finally, *Dematteis* was admittedly a case of first impression, 520 F.2d at 411, whereas the present case arises under a background that has seen expansion of rules requiring notice of a right to sue.

The *Coles* and *Eastland* private sector analogies are not dispositive of this case. To the extent that they are material, the private sector comparisons are not convincing.

11. It has recently been held that a federal employee dismissed during the probationary period may be constitutionally entitled to a hearing. *Churchwell v. United States,* 545 F.2d 59 (8th Cir. 1976); *Casey v. Roudebush,* 395 F.Supp. 60 (D.Md.1975). The rationale of these cases is that to the extent that termination jeopardizes one's prospects for continued employment, a liberty interest is implicated and a hearing is required pursuant to the command

elected to forego the E.E.O. appeals process in favor of appealing through the C.S.C. It is undesirable as a matter of equity to either broadly construe a statute or engraft a notice requirement designed for one appeals process onto another process in a situation such as this where plaintiff made a knowing and voluntary choice to pursue an option not providing notice of a right to sue. It does not matter that with the benefit of perfect hindsight, she feels she chose the less desirable option.

Accordingly, it is concluded plaintiff's first administrative claim is not cognizable by virtue of the thirty-day time limitation for filing suit under subsection 717(c).

## II.

■ Plaintiff did not initiate her second administrative claim under the E.E.O. regulations until over 250 days after her discharge. 5 C.F.R. § 713.214(a)(1) (1977) states that for a complaint to be processed it must be brought to the attention of the E.E.O. Counselor within thirty days of the discharge. The complaint must then be submitted in writing to the proper official within fifteen days of the final interview with the E.E.O. Counselor. On this basis, plaintiff's E.E.O. complaint was rejected as untimely throughout the process of her second administrative appeal. The Third Circuit held in *Ettinger v. Johnson,* 518 F.2d 648, 652 (3d Cir. 1975), that: "Since dispensation from the exhaustion requirement would give federal employees greater access to the district courts than private sector litigants, the principle of equality of remedy . . . mandates that federal employees also be required to exhaust their administrative remedies before suing in the district court." The *Ettinger* court proceeded to indicate that a specific example of a failure to exhaust administrative remedies is the failure to meet the time requirements of 5 C.F.R. § 713.214(a)(1) (1977).[12] 518 F.2d at 652. Thus, with respect to her second administrative claim, plaintiff's complaint must be dismissed due to her failure to exhaust available administrative remedies.[13]

Summary judgment will be granted to defendants pursuant to F.R.Civ.P. 56.

of *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

*Churchwell* and *Casey* conflict with a series of cases holding that a hearing is not required for a dismissal of a probationary federal employee. *Toohey v. Nitze,* 429 F.2d 1332 (9th Cir. 1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971); *Jaeger v. Freeman,* 410 F.2d 528 (5th Cir. 1969); *Sayah v. United States,* 355 F.Supp. 1008 (C.D.Cal.1973); *Heaphy v. United States Treasury Department,* 354 F.Supp. 396 (S.D.N.Y.1973). In addition, the Supreme Court in *Christian v. New York Department of Labor,* 414 U.S. 614, 94 S.Ct. 747, 39 L.Ed.2d 38 (1974), *rev'g on other grounds,* 347 F.Supp. 1158 (S.D.N.Y.1972), accepted in dictum the lower court determination that except in circumstances enumerated in the probationary employee regulations, a probationary employee is not entitled to a hearing. 414 U.S. at 618 n. 4, 94 S.Ct. 747.

This Court need not take a position concerning whether a hearing may be required under the probationary employee regulations. In the present instance, plaintiff's complaint of discrimination entitled her to a hearing and she voluntarily elected to forego that hearing. Thus even if a liberty interest recognized by *Roth* is implicated by the facts of this case, plaintiff was afforded the opportunity for a hearing and chose to proceed under an appeals procedure that did not provide a hearing.

**12.** 5 C.F.R. § 713.214(a)(1) (1977) is presently in the same form as it was during the time of the decision in *Ettinger, supra.*

**13.** One could argue that because *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), held that subsection 717(c) affords public sector employees the right to de novo judicial consideration of their Title VII claims, plaintiff is not precluded from a full judicial review on the merits despite her failure to exhaust. But because the Third Circuit had ruled prior to *Chandler* in *Sperling v. United States,* 515 F.2d 465 (3d Cir. 1965), that de novo review was required, *Ettinger, supra,* specifically addressed the relationship of the de novo review requirement to the exhaustion requirement, found the two to be consistent, and concluded that summary judgment could be granted in a trial de novo proceeding under subsection 717(c). 518 F.2d at 652–53. *See Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 425, 520 F.2d 108, 157 (1975).