Mark D. SHENKAN,

v.

John E. POTTER, Postmaster General
Mark Shenkan, Appellant.

No. 02–3508.

United States Court of Appeals,
Third Circuit.

Argued May 13, 2003.

Decided June 13, 2003.

Bruce A. Bagin, [Argued], Wienand & Bagin, Pittsburgh, PA, for Appellant.

Bonnie R. Schlueter, Christine A. Sanner, [Argued], Office of the U.S. Attorney, Pittsburgh, PA, for Appellee.

Before RENDELL, SMITH and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Mark Shenkan appeals from an order entered in the District Court on August 16, 2002, terminating his disability discrimination claims against the United States Postal Service for failure to timely exhaust administrative remedies. We will affirm.

In November of 1995, and again in November of 1997, Mark Shenkan, who suffers from bipolar disorder, applied for "casual" temporary positions with the United States Postal Service. On both occasions, the Postal Service ultimately failed to hire him. On March 17, 1998, Shenkan, believing he had been discriminated against, contacted the Postal Service's Equal Employment Opportunity ("EEO") counselor for mandatory counseling. After counseling failed to resolve the issue, Shenkan filed a formal administrative complaint, which was dismissed by the Postal Service because Shenkan had failed to "initiate contact with [the] Counselor within 45 days of the date of the matter alleged to be discriminatory," as required by 29

C.F.R. § 1614.105. That decision was initially upheld on appeal to the Equal Employment Opportunity Commission ("EEOC"), but was later reversed on reconsideration, with the EEOC holding that Shenkan's claims were not barred for failure to timely exhaust because they fell within the "continuing violations doctrine" exception. On remand, the Postal Service found Shenkan's disability discrimination claims to be meritless.

Shenkan filed the present suit in February of 2001, alleging that the Postal Service discriminated against him by failing to hire him in 1995 and 1997 on the basis of his disability, and, more broadly, that the Postal Service had a pattern or practice of discriminating against the disabled with regard to temporary employment positions. Soon after the suit was filed, the Postal Service moved to dismiss or, in the alternative, for summary judgment, again maintaining that Shenkan's claims were time-barred because he had failed to meet with the EEO counselor within 45 days. After a limited period of discovery, the District Court agreed that Shenkan had failed to comply with the requisite time limits, and granted the Postal Service's motion. This timely appeal followed.

■ The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Shenkan first argues that the District Court erred in concluding that he could not reap the benefit of the continuing violations doctrine,[1] an "equitable exception to the timely filing requirement" that ap-

---

1. Shenkan alternatively argues that we should accord deference to the EEOC's determination that his claims were timely. Our case law is clear, however, that our review here is de novo. See, e.g., Ettinger v. Johnson, 518 F.2d 648, 652 (3d Cir.1975) (remanding for a de novo hearing to determine whether the plaintiff timely exhausted her administrative remedies); Kocian v. Getty Refining & Mktg. Co., 707 F.2d 748, 754 n. 9 (3d Cir.1983) ("[T]he EEOC's belief as to the timeliness of a charge is not determinative."); see also, e.g., Teemac v. Henderson, 298 F.3d 452 (5th Cir. 2002).

plies "when a defendant's conduct is part of a continuing practice." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir.2001) (quotations omitted); *see also, e.g., West v. Phila. Elec. Co.*, 45 F.3d 744, 754–55 (3d Cir.1995). Under the continuing violations doctrine, " 'an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time-barred." ' *Cowell*, 263 F.3d at 292 (quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991)). In order to establish a continuing violation, the plaintiff must "demonstrate that at least one act occurred within the filing period," and that the employer's actions were "more than the occurrence of isolated or sporadic acts of intentional discrimination." *West*, 45 F.3d at 754–55 (quotations omitted).

The present suit essentially alleges that the Postal Service had a continuing policy of discriminating against the disabled with respect to temporary employment positions.[2] Shenkan contends that at least two acts that were part of the policy occurred within 45 days of his contacting the counselor, namely (1) his February 1998 letter requesting "reconsideration" for employment, which went unanswered by the Postal Service, and (2) the Postal Service's confirmation in May of 1998 that his employment file remained active, and Shenkan's subsequent update of his application materials. But, neither of the supposed acts can be plausibly said to evidence any alleged discriminatory policy, as is explicitly required under the continuing violations doctrine. *See, e.g., Cowell*, 263 F.3d at 292.

■ Further, we agree with the District Court's conclusion that Shenkan is really complaining of two failures to hire, which are "isolated, intermittent acts of discrimination," *West*, 45 F.3d at 755, that are "not susceptible to a continuing violation analysis." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 483–84 (3d Cir.1997). Three factors distinguish continuing violations from isolated occurrences—the subject matter, frequency, and, most importantly, degree of permanence of the underlying acts. *See Cowell*, 263 F.3d at 292; *Rush*, 113 F.3d at 482. None point in Shenkan's favor. *See, e.g., Rush*, 113 F.3d at 483–84 (holding that the plaintiff's "failure to promote and train claim addresse[d] discrete instances of alleged discrimination that [we]re not susceptible to a continuing violation analysis"). The Supreme Court recently emphasized this point in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), when it stated: "Discrete acts such as ... refusal to hire are easy to identify. Each incident of discrimination ... constitutes a separate actionable 'unlawful employment practice." And, our warning in *Cowell* applies equally here: "[T]he continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." *Cowell*, 263 F.3d at 295.[3]

---

2. Shenkan also argues that his claims were timely because it would have been futile for him to apply during the limitations period given the Postal Service's alleged policy of discrimination. However, Shenkan did not allege in his complaint that he was in fact dissuaded from applying, nor is there evidence in the record to support that contention.

3. Shenkan contends that our continuing violations case law was "abrogated" by the Supreme Court's ruling in *Morgan*, but nothing in *Morgan* supports that remarkable assertion. Shenkan also cites cases from some of our sister Courts of Appeals for the proposi-

■ Throughout, Shenkan has concentrated on his continuing violation claim, but he has also maintained that his claims were not time-barred because the Postal Service never notified him of the applicable time limits, citing a regulatory exception to the limitations period that provides: "The agency or the Commission shall extend the 45–day time limit ... when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them." 29 C.F.R. § 1614.105(a)(2).[4] Under the cited regulation, if Shenkan could prove that he was never notified and that he was not otherwise aware of the time limits, his claims would not in fact be barred for his failure to contact the counselor within the proscribed 45 days.

Although there appears to be disputed record evidence as to whether the Postal Service did provide adequate notice, Shenkan has never come forth with any evidence that he was "not otherwise aware" of the relevant limitations periods, as required by 29 C.F.R. § 1614.105(a)(2). It is particularly notable that Shenkan's own affidavit, which specifically asserts that he was never notified, does not also aver that he was otherwise unaware of the relevant periods. Moreover, the record confirms that Shenkan was being represented by his brother, a licensed attorney, from at least August of 1997, and, indeed, the District Court noted that "Shenkan was assisted by counsel, who is also his brother, throughout each application process." Whether or not the Postal Service actually

notified Shenkan, his attorney certainly should have been aware of the 45 day period. *Cf. Bonham v. Dresser Indus., Inc.*, 569 F.2d 187, 193 (3d Cir.1977) ("Failure to post the required notice will toll the running of the [limitations] period, at least until such time as the aggrieved person seeks out an attorney or acquires actual knowledge of his rights...."). And, the Supreme Court has on many occasions affirmed that a party is "deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (quotations omitted); *see also Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 241 (3d Cir.1999) (" '[T]he principles of equitable tolling .... do not extend to what is at best a garden variety claim of excusable neglect' by an attorney." (quoting *Irwin*, 498 U.S. at 96, 111 S.Ct. 453)).

■ Finally, Shenkan argues that, to the extent he has been unable to establish a genuine issue of material fact, it is due solely to the District Court's refusal to grant his requests for additional discovery. "We apply the abuse of discretion standard when reviewing orders regarding the scope and conduct of discovery." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1310 (3d Cir.1995). Generally we will not upset the District Court's handling of discovery absent a showing "that the district court's denial of discovery

---

tion that one who is asserting a "systemic" continuing violation need not prove, for instance, that a discrete act evidencing the policy took place during the relevant limitations period. *See, e.g., Jensen v. Frank*, 912 F.2d 517, 523 (1st Cir.1990). Such case law, however, is clearly inconsistent with our binding precedent. *See, e.g., Cowell*, 263 F.3d at 292–95; *Rush*, 113 F.3d at 482–84; *West*, 45 F.3d at 754–55.

4. Shenkan's reference to equitable tolling and our decision in *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994), however, is clearly misplaced. There is no evidence that the Postal Service actively misled Shenkan or somehow extraordinarily prevented him from asserting his rights. *Id.* at 1387.

'made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible." ' *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 107 F.3d 1026, 1032 (3d Cir.1997) (quoting *In re Fine Paper Antitrust Litigation,* 685 F.2d 810, 818 (3d Cir.1982) (quotations omitted)); *see also, e.g., Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 90 (3d Cir. 1987) (stating that we consider, among other facts, whether the district court's decision "deprived [the claimants] of crucial evidence, or otherwise constituted a gross abuse of discretion resulting in fundamental unfairness"). Here, the District Court allowed Shenkan ninety days of discovery before ruling on the Postal Service's preliminary motion, during which Shenkan submitted twenty-five interrogatories, made numerous document requests, and took an extended deposition of a senior Postal Service employee. We can find no abuse of discretion under such circumstances.

Accordingly, we will AFFIRM.